R. H. WRIGHT v. IREDELL TELEPHONE COMPANY.

(Filed 2 November, 1921.)

**Corporations—Certificates—Transfer of Shares—Limitation of Powers— Approval of Directors—Trusts—Telephones—Competitive Service.**

Where a local telephone exchange has been organized for the purpose of excluding its control by trusts or combinations, or corporations hostile to its interests, under a certificate of incorporation obtained from the Secretary of State requiring any transfer of its stock to be favorably passed upon by its board of directors, and the certificates of stock contain this provision, the action of the directors declining to have the shares paid for by the applicant transferred to him on the books of the company and thus precluding his voting as a shareholder, passed in good faith, is valid, there being nothing therein against public policy, or other provisions of the law; and notwithstanding his averments that he was not interested in companies hostile to this one, or that he has no improper motive therein.

APPEAL by plaintiff from *Horton, J.,* at chambers, 6 May, 1921, from DURHAM.

Civil action for writ of mandamus to require the defendant to transfer and issue to the plaintiff certain certificates of its corporate stock. The facts are fully set out in the judgment of the Superior Court:

"This cause was regularly instituted in the Superior Court of Durham County by issuance of summons on 26 May, 1920, complaint and answer were duly filed, and it was agreed by the parties that the court should find the facts and enter judgment in accordance with such finding of facts, and after hearing the pleadings and the testimony offered at the trial, the court finds the following facts:

"1. This is a proceeding by mandamus to compel the defendant to transfer to the plaintiff 116 shares of common capital stock of the defendant.

"2. That prior to the year 1906 the citizens of the city of Statesville and county of Iredell, North Carolina, enjoyed the benefit of a locally owned, independent, telephone system; that the Bell Telephone Company had repeatedly made application to the board of aldermen of said city for a franchise to establish its system in said community, and the said board of aldermen had from time to time refused to grant said franchise; that on the ........ day of ................, 1906, the Bell Telephone Company, without notice to the board of aldermen or to the citizens of Statesville, bought out the independent system and undertook to control and monopolize the telephone business in Statesville, and thereafter charged rates greatly in excess of the rates formerly charged by the independent company for said service.

"3. That after the purchase of the local system by the Bell Telephone Company, the citizens of said community, in order to free themselves from what they believed to be a monopoly, and for the purpose of establishing and maintaining a local independent telephone system, organized the Iredell Telephone Company, the defendant in this case, and thereupon procured a certificate of incorporation under the general laws of the State on 22 August, 1906, said certificate of incorporation containing the provisions hereinafter set out: That said certificate of incorporation was approved by the stockholders of the defendant and was immediately recorded in the office of the clerk of the Superior Court of Iredell County, and under and by virtue of said certificate of incorporation the defendant since said time has and is now engaged in the telephone business in the city of Statesville, N. C., under its said certificate of incorporation; that the certificate of incorporation of the defendant, among other things, specifies the objects of the corporation as follows: 'To build, operate, maintain and own an independent telephone business in the city of Statesville, N. C., and generally to carry on an independent telephone system in said city and elsewhere.'

"4. That at the time of organizing said corporation the stockholders, realizing that unless the sale and transfer of its capital stock was safeguarded that there would be a possibility of a majority of the stock of

the corporation being bought up by persons not in harmony with the independent telephone business, and that the control of the corporation would pass directly or indirectly into the hands of unfriendly and antagonistic interests, and that thereupon the stockholders, in order to safeguard their investment, and to prevent the said corporation falling into the hands of persons or corporations antagonistic to the objects and purposes of an independent telephone company, procured the Secretary of State to grant the defendant a certificate of incorporation or charter, containing the following limitations upon the sale and transfer of its stock, to wit:

" '(Section Eleventh) Shares of stock in this corporation shall not be transferred or sold until said sale or transfer shall have been reported to the directors and approved by them.'

"5. That to further safeguard the sale of its stock, as well as to give notice to parties who might attempt to purchase the same of the limitations contained in the charter and the terms upon which said stock was issued, accepted and held by the stockholders, the defendant caused its certificate of stock to be written in the following words and figures, to wit:

'Certificate of Common Stock.

Incorporated under the laws of the State of N. C.

No................        IREDELL TELEPHONE COMPANY,        Shares............
Statesville, N. C.

This certifies that ........................................ is the owner of ............ shares of Twenty-five Dollars each of the Capital Stock of Iredell Telephone Company, which cannot be sold or transferred until reported to, and approved by, the Board of Directors, and then transferable only on the books of the corporation by the holder thereof in person or by attorney, upon surrender of this certificate properly endorsed.

In witness whereof, the said corporation has caused this certificate to be signed by its duly authorized officer and to be sealed with the seal of the corporation at Statesville, N. C.

This the ........ day of ...................., A. D. 190.....

................................, Sec. and Treas.        ...................., Pres.'

"6. That the stock desired by the plaintiff to be transferred to him on the books of the corporation in this action is in the identical language above set out.

"7. That none of the owners of the stock now held by the plaintiff have complied with the provisions of defendant's charter governing sales and transfers of its stock, and have never complied with the provisions and limitations set out in the certificates of stock, and that none

of said owners ever applied to the directors of the defendant for approval of said sale to the plaintiff or the transfer of any of said stock to the plaintiff.

"8. That the plaintiff has no financial interest in the Southern Bell Telephone Company, but that plaintiff, a Mr. Martin, and two nephews of the plaintiff, own the Interstate Telephone and Telegraph Company, of Durham, N. C.; that at the time the plaintiff undertook to acquire shares of stock in the Iredell Telephone Company there was an agreement or understanding between the Interstate Telephone and Telegraph Company, of Durham, and the Southern Bell Telephone Company, and the American Bell Telephone Company could use the office of the Interstate Telephone and Telegraph Company, of Durham, N. C., for long distance, the Interstate Telephone and Telegraph Company, of Durham, N. C., receiving a commission on all outgoing long-distance messages. The Interstate Telephone and Telegraph Company of Durham had under such agreement no right to build long-distance lines to points where the Bell Telephone had long-distance lines. The Interstate Telephone and Telegraph Company was doing the local business in Durham, and the Southern Bell and American Bell were doing the long-distance business. The Southern Bell and the American Bell had no local line in Durham; that the plaintiff knew there was competition between the Southern Bell Telephone Company and the Iredell Telephone Company, at Statesville, and the plaintiff and his associates bought out the Bell Company at Statesville, and that the Iredell Telephone Company has never paid any dividends on its stock, and that the plaintiff had no knowledge of what rates were charged by the Southern Bell Telephone Company in Statesville or anything about the controversy between the Iredell Telephone Company and the Southern Bell Telephone Company in Statesville, N. C., other than that there was competition between them.

"9. That the plaintiff is in the possession of more than 116 shares of the capital stock of the defendant, he having attempted to purchase said shares of stock, and has paid a valuable consideration therefor, and never purchased any stock in the Southern Bell Telephone Company; that the plaintiff has never been able to get the shares of stock in the defendant transferred to him on the books of the company, and has never been permitted to vote in any of the meetings of the stockholders of the defendant.

"10. That on the ........ day of August, 1917, the plaintiff applied to the defendant's directors to have the stock held by him transferred; that thereupon, in pursuance of power contained in the certificate of incorporation and also written in the face of each share of stock issued by the

defendants, the said directors met, and after carefully considering the matter, acting in good faith, declined to approve the transfer of said stock to the plaintiff, and declined to approve the sale or transfer of said stock to the plaintiff. The action of the board of directors was put in writing and was duly communicated to the plaintiff. The answer of the board of directors was as follows, to wit:

" 'This board, after duly considering the matter, disapproved the sale of said stock to Mr. Wright, but approved of the sale of stock by said stockholders at the price offered to the agents of Mr. Wright, and have secured purchasers therefor who are local citizens and stockholders of the Iredell Company, and in sympathy with the independent telephone business, and engaged in building up the Iredell Telephone Company as an independent telephone company, and are ready, upon delivery of said stock properly endorsed, to pay therefor in cash.'

"On the foregoing findings of facts the court is of the opinion that the plaintiff is not entitled to the relief prayed, and it is ordered and adjudged by the court that the writ of mandamus be, and the same is hereby denied, and the plaintiff taxed with the costs.

"J. LLOYD HORTON, *Judge*," etc.

From the foregoing judgment the plaintiff excepted and appealed.

*W. D. Turner, Fuller, Reade & Fuller for plaintiff.*
*Bryant, Brogden & Bryant and H. P. Grier for defendant.*

STACY, J. It appears from the facts found by his Honor and embodied in the judgment of the Superior Court, that prior to the year 1906, the people of Statesville and Iredell County enjoyed the benefits of a locally owned, independent, telephone system. The Southern Bell Telephone Company had repeatedly made application to the board of aldermen of the city of Statesville for a franchise to establish its system in said community, but this request had been consistently denied. Whereupon, in 1906, the Southern Bell Telephone Company, without notice to the board of aldermen or the citizens of Statesville, bought out the independent system and undertook to control and to monopolize the telephone business at rates greatly in excess of those formerly charged in said locality. In order to rid the community of this situation, and for the purpose of establishing and maintaining a local independent telephone system, the Iredell Telephone Company, defendant herein, was organized by a number of interested citizens who lived in the city of Statesville. For reasons which seemed compelling to the incorporators, and which they deemed necessary to safeguard the interests of stock-

holders in the defendant company, there was embraced in the certificate of incorporation the following limitation on the sale and transfer of stock:

"Shares of stock in this corporation shall not be transferred or sold until said sale or transfer shall have been reported to the directors and approved by them."

The charter was duly approved and issued by the Secretary of State, accepted by the corporators, and the certificate of stock, issued to each stockholder, contained a statement on the face of said stock that it could not "be sold or transferred until reported to, and approved by, the board of directors, and then only transferable on the books of the corporation by the holder thereof in person or by attorney," etc.

The plaintiff, a resident of Durham, has in his possession 116 shares of stock of the defendant corporation which in August, 1917, he demanded that the directors transfer to him. . The directors met, and after carefully considering plaintiff's demand, and acting in good faith, declined to approve the sale and transfer of said stock, and made the following order in reference thereto, which was communicated to the plaintiff:

"This board, after duly considering the matter, disapproved the sale of said stock to Mr. Wright, but approves of the sale of said stock by said stockholder, at the price offered to the agents of Mr. Wright, and have secured purchasers therefor who are local citizens and stockholders of the Iredell Telephone Company and in sympathy with the independent business and engaged in building up the Iredell Telephone Company as an independent telephone company, and are ready, upon delivery of said stock, properly endorsed, to pay therefor in cash."

The plaintiff contends that the aforesaid restrictions and powers granted defendant in its charter, and set out in its certificates of stock, are against public policy, and therefore void. On the other hand, the defendant contends that said provisions are just, proper and reasonable limitations on the sale and transfer of its stock, and that the action of its directors, in refusing to transfer the 116 shares to the plaintiff, but approving said sales at the price offered by his agents, and securing purchasers therefor, who were in sympathy with the objects and purposes of the defendant, was within the rights granted to the defendant and did not, and does not, constitute any unreasonable restraint upon the power of alienation.

We have found no statute in the laws of this State forbidding restrictions and limitations in the sale and transfer of stock in corporations. And it would seem that where the Legislature, in the exercise of its constitutional grant, or reservation (Art. VII, sec. 1, Const.), has authorized

the Secretary of State to issue certificates of incorporation and approve the application for charters, the provisions of such charters, not inconsistent with the legislative policy and so approved by the Secretary of State have, at least the force and effect of a valid agreement and binding as between the stockholders who take with notice of such provisions. *Dempster Mfg. Co. v. Downs,* 126 Iowa, 80; 3 Amer. Cas., 187, and note. As bearing somewhat upon this point see, also, *White v. Kincaid,* 149 N. C., 415.

In the case of *Longyear v. Hardman,* 219 Mass., 405, *Rugg, C. J.,* in an opinion of great force and clearness, states this position as follows:

"The absence of any definite limitation upon the power of the incorporators to impose restrictions must be taken to be a legislative determination that considerable latitude was intended. No such restrictions can be declared to be unlawful under these circumstances unless palpably unreasonable. A corporation bears some resemblance to a partnership. Plainly no new partner can be introduced into a partnership without the assent of all the partners. Said *Chief Justice Holmes* in *Barrett v. King,* 181 Mass., 476, at p. 479, when discussing a somewhat similar proposition: 'Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. . . . There seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm.' The motives for the retention of such right in a small business corporation, where substantial changes in ownership of stock well might be accompanied by a change of managing officers, are obvious. Subscriptions of stock sufficient to organize the corporation with adequate capital might be difficult to obtain unless permanency of management were secured in some way against possible changes arising from mutations in the ownership of a bare majority of the stock. Elements of importance both to the subscribers of capital stock and to the executive officers might render some such restriction a valuable security to the investment of money and to the personal devotion of individuals in building up the business. The characteristics of associated stockholders may be important. Harmony of purpose and of business methods and ideals among stockholders may be a significant element in success. The insertion of the restriction upon the right of transfer of the shares of stock in the agreement of association, the initial act in the organization of the company upon which depends all that comes after, is a limitation upon the corporation. It becomes a part of its being and enters into each share of stock as a part of its essence. The corporation comes into existence with this inherent qualifying restraint. It is agreed by all

the original incorporators who in respect of determining the nature of the corporation speak for future stockholders. It must be approved by the commissioner of corporations as representative of the commonwealth before the charter can issue. A copy of it is a public record in the office of the secretary of the commonwealth, where it may be read by all who contemplate becoming stockholders. . . . The owners of stock in a corporation thus organized cannot complain of such a congenital characteristic. Each stockholder takes his stock subject to this restraining condition. . . . That there is nothing inherently unconscionable in such a limitation upon the right of transfer is manifest from the very broad power exercised by organizers of companies under the English acts and in some of our states."

Mr. Thompson, in his work on Corporations (2 ed.), vol. 4, sec. 4135, states the general law as follows:

"The rule is well settled that a provision in the charter or articles of incorporation that no stockholder shall sell and transfer his stock, either without the consent of all other stockholders or that he will first offer it to the stockholders or to the corporation before selling to other persons, is binding on persons who become owners of stock. These provisions, which really amount to agreements between stockholders themselves, are not invalid as against public policy, nor do they amount to an improper restraint of the power of alienation. There seems to be no objection to a corporation reserving to existing members the right to choose their associates. Such a provision justifies the refusal of the corporation to transfer the stock." And this is supported by a number of authorities cited in the text. See, also, the following section 4136, and our own statutes, C. S., 1114, sub-sec. 7, and sec. 1128.

Counsel for appellant have called our attention to the decisions of this Court rendered in *Bridgers v. Bank,* 152 N. C., 293, and *Sheppard v. Power Co.,* 150 N. C., 776, as tending to establish a contrary doctrine, but we do not think these cases are in point. The questions there presented dealt with the validity of voting trust agreements.

Probably it should also be observed that we are not now considering a case where the restrictions and limitations are contained only in a resolution or by-law of the corporation, and not in the provisions of its charter.

In the case at bar the limitations under consideration are contained in the defendant's charter, and they are also set out in its stock certificates. The corporation came into existence with this inherent qualifying restraint as one of the rights and powers which it might exercise. It was agreed to by all the original incorporators, and the same was ap-

proved by the Secretary of State. The board of .directors have acted in good faith, and we think the judgment of his Honor, holding that such was permissible under the defendant's right of organization, must be upheld, in the absence of any allegation or proof of arbitrary, oppressive or unreasonable conduct.

Affirmed.