**Linda Ellen MOORE, Appellant
(Petitioner Below),**

v.

**Birchell MOORE, Appellee
(Respondent Below).**

No. 4–285 A 40.

Court of Appeals of Indiana,
Third District.

Sept. 26, 1985.

John F. Lyons, Daniel M. Graly, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

HOFFMAN, Judge.

Linda Moore seeks review of the distribution of property ordered in connection with the granting of her petition for divorce from Birchell Moore. The appellee Birchell Moore has not provided this Court with an appeal brief. Therefore, Linda may prevail by making a prima facie showing of reversible error. *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, *reh. denied, trans. denied.*

The Moores were married on October 22, 1963, and separated in May 1982. Linda filed her petition for dissolution of marriage on December 10, 1982.

During the course of the marriage the parties acquired household and personal items but no real property. The major asset of the couple consisted of shares of stock in F.B.I. Farms, Inc., a close corporation formed by Linda's father, Ivan Burger; his son, Fred; and son-in-law, Birchell, Linda's husband. Thus, the trial court distributed the personal items, household items and stock as part of the dissolution of the marriage.

The "Findings on Judgment-Property" provides in pertinent part:

"To effect a just and reasonable districution [sic], the wife should receive as her separate and sole property, viz:

(1) F.B.I. employment benefits of home, food, utilities, car maintenance, cash, & etc.

\* \* \* \* \* \*

(6) ½ 1966 red Corvette 44 B 1966 $3,000.00

(7) ½ ownership 1978 Lincoln 44A643 $2,250.00

(8) ½ ownership 1974 Chevrolet Malibu $300.00

\* \* \* \* \* \*

The Court has also considered the parties' education, prospect for future earnings, the availability for special benefits in the future, the respective hard labor rendered for F.B.I. prior to separation, the involuntary termination of the hus-

band by F.B.I., the respective attitude of the parties toward marriage salvation, and the respective care of assets, as well as the unique nature and value of F.B.I. Farms Inc. including possession by it of antiques and the other depreciated property of value and to adjust said equities, husband and wife are now ordered to endorse in the blank and surrender the 2507 & 417 shares of F.B.I. Farms, Inc. to the Clerk of this Court within (10) ten days hereafter and said Clerk shall hold same until the adjustment order is fully satisfied.

\* \* \* \* \* \*

Said wife shall pay to said Clerk the sum of $296,000.00 by way of adjustment equity in ten annual installments of $29,-600.00 cash commencing December 15, 1984 and continuing until paid.

\* \* \* \* \* \*

In the event of default [sic], the Clerk shall enter judgment in an amount equal to the unpaid·adjustment equity and may issue execution upon praecipe and the said corporate stock may be sold without relief from valuation and appraisement laws...."

After entry of the judgment, the appellant filed a motion to correct errors challenging the distribution of the one-half interest in each of three automobiles, a Corvette, a Lincoln, and a Chevrolet Malibu, alleging these items were not marital assets subject to distribution. The appellant also challenged the trial court's arrangement for the distribution of the stock in F.B.I. Farms, Inc. Pursuant to the motion to correct errors, the trial court issued, in pertinent part, the following ruling:

"In any event, it has been held that the failure to establish a periodic buy-out amount rebuts the fair market value presumption of a buy-sell agreement, *Olsher v. Olsher* (Ill.App.1979) [78 Ill.App.3d 627, 34 Ill.Dec. 32] 379 [397] N.E.3d [2d] 488, *Grayer v. Grayer* (N.J.App.1977) [147 N.J.Super. 513] 471 [371] A.2d 753. This Court recognizes that a majority block has the authority to rig the figure at will. This Court reviewed the nature of the business and history of the enterprise and considered the economic outlook generally, and for a farm operation. Said Corporation has earning capacity to pay its creditors, employees as well as to fund substantial fringe benefits.

There was no evidence that dividends were missed nor were comparable sales proven. This Court knows corporate officers and credits their published balance sheet figures which were adduced. The Court did not review an earlier dissolution judgment in this Court because it involved a compromise buy-out and occurred several years ago. A valuation for tax purposes two years earlier than divorce was held not to be binding where it was based on different information and prepared for different purposes, *Marriage of Moffatt* (Ia.1979) 279 N.E.2d [N.W.2d] 15. F.B.I. Farms, Inc. is a going business and must be valued as such.

\* \* \* \* \* \*

Notwithstanding the Court's view the original judgment hearin [sic] was equitable, applying the reasoning of *In re Marriage of Walker* the within judgment is now modified.

1. Annual installment heretofore fixed for 'December 15, 1984' is now amended to read: 'February 15, 1985.'

2. The last paragraph on page (3) is now amended to read: 'Upon payment for said respective 1/10 share, Clerk shall deliver 1/10th share to former wife or assigns to be transferree's [sic] absolute property, including future income.....'"

On appeal, Linda again argues that the judgment is erroneous to the extent it distributes an interest in each automobile, alleging the automobiles are not marital assets. Linda again challenges the distribution of the F.B.I. Farms, Inc. stock, alleging the manner of distribution is not just and reasonable, is the product of consideration of improper factors by the trial court and does not effect a final distribution of property.

The disposition of property pursuant to a dissolution of marriage is provided for in

IND.CODE § 31–1–11.5–11, which provides in pertinent part:

"Disposition of property

Sec. 11. Disposition of Property. (a) For purposes of this section, 'final separation' means the date of filing of the petition for dissolution of marriage under section 3 of this chapter.

(b) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable, the court shall consider the following factors:

(1) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) the economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

■ Applying this statute to the terms of the property distribution, the inclusion of the Corvette and the Lincoln in the division of property was error. All the evidence concerning the Corvette indicated it was owned by Linda's father, Ivan Burger. In a dissolution proceeding the trial court may not award property which is not owned by the parties. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41. The fact that the Corvette was available to Linda for her use however, could be considered by the court in determining a just and reasonable distribution of the total assets. *In re Marriage of Davis* (1979), 182 Ind.App. 342, 395 N.E.2d 1254, *reh. denied.*

■ The only testimony concerning acquisition of the Lincoln was presented by Linda and indicated a purchase in March, 1983 subsequent to the filing of the petition for dissolution on December 10, 1982. The vehicle was therefore acquired after the final separation of the parties and was not subject to distribution, IND.CODE § 31–1–11.5–11(b), even though such acquisition could be considered in determining a just and reasonable distribution. *Irwin v. Irwin* (1980), Ind.App., 406 N.E.2d 317.

■ The Chevrolet Malibu was properly subject to distribution. Linda admitted she was a registered owner of the vehicle, and there was no evidence as to when or by what means the vehicle was acquired. The trial court chose to treat the Chevrolet as marital property subject to division. The distribution of property is within the discretion of the trial court and will be reviewed only for abuse of discretion. *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378. There was no abuse of discretion in including the Chevrolet in the marital pot where there was only evidence of registered ownership by the wife without evidence of factors to remove the vehicle from the list of marital assets.

[5–7] The final area of review concerns the disposition of the shares of F.B.I. Farms, Inc. The Moores held 2,924 shares of stock. 417 shares were in Linda's name, a gift from her father as part of his estate

plan. 2,507 shares were in Birchell's name and were part of the original stock distribution at the time of formation of the corporation. The shares in Birchell's name represented the value of the property transferred into the corporation by the Moores at the inception of the corporation. Both acquisitions occurred during the course of the marriage and are within the ambit of IND. CODE § 31-1-11.5-11(b) providing for the division of all assets of either or both the parties in which there is a present interest within the relevant time frame between marriage and final separation. *Sadler v. Sadler* (1981), Ind.App., 428 N.E.2d 1305. The division of the property must be made in such a manner that the division is final at the time of dissolution, *Johnson v. Johnson* (1984), Ind.App., 460 N.E.2d 978, and that the division is just and reasonable. Just and reasonable requires a fair division which does no wrong to either party, but does not require an equal or relatively equal division. *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996, *reh. denied.* The just and reasonable final division of the property can be accomplished through one of three statutorily authorized mechanisms: division in kind; setting property over to one spouse and require either spouse to pay a reasonable and just sum in gross or in installments; or ordering the sale of the property and dividing the proceeds. IND.CODE § 31-1-11.5-11(b). In effecting the just and reasonable distribution, the court is to consider the factors listed in IND.CODE § 31-1-11.5-11(b): contribution to acquisition including homemaker contributions; extent of acquisition prior to marriage or through inheritance or gift; economic circumstances of each at time disposition is to become effective; disposition or dissipation of property during marriage by either; and earnings or earning ability of each. The trial court must consider the facts of each case in connection with these listed factors to determine what is a just and reasonable distribution. *In re Marriage of Dreflak* (1979), 181 Ind. App. 651, 393 N.E.2d 773. After determining the distribution and in order to secure the division, the court is empowered to provide for security or bond. IND.CODE § 31-1-11.5-15.

■ In the present case, the "Findings on Judgment-Property" contains a recitation as to factors considered by the trial court in distributing the stock of F.B.I. The court stated it considered the "involuntary termination of Birchell by F.B.I." This factor is not within the listed considerations. Again, in the ruling on the (appellant's) motion to correct error, the trial court lists the considerations in determining the value and distribution of the stock. This list of factors included review of the nature and history of the business and economic outlook and the fact the trial judge "knows corporate officers...." The court's personal knowledge of the corporate officers is certainly not a factor listed within IND.CODE § 31-1-11.5-11(b) and therefore not a proper consideration by the court. There was no evidence presented to the court on the subject of the economic outlook in general or for a farm corporation and the subsequent effect on the value of stock. Therefore, this factor could not properly be considered by the court. *Dean v. Dean, supra,* Ind.App., 439 N.E.2d 1378.

■ Appellant argues further that the trial court considered improper factors in the distribution as evidenced by the distribution to the wife of the future benefits from employment by F.B.I. Farms, Inc. Rights in future earnings, in the nature of benefits here, are not vested and not property within the marital property subject to division, *Wilcox v. Wilcox* (1977), 173 Ind. App. 661, 365 N.E.2d 792. Although unvested benefits may be considered as a factor in determining the just and reasonable division of the assets, *Irwin v. Irwin, supra,* Ind.App., 406 N.E.2d 317, it was error for the trial court to distribute future employment benefits as part of the division of property.

The appellant next contends the distribution of stock is not just and reasonable and therefore error in that it is in derogation of a buy-sell agreement restricting the sale of the corporate stock. The agreement is con-

tained in the minutes of the corporation to the effect that the corporation shall have the first opportunity of purchasing stock at no more than the book value thereof and if, in fact, the corporation is not interested in purchasing said stock any stockholder of record would then be given the opportunity to purchase and if, in fact, the stock is not sold pursuant to that section, then the stock could be sold to any blood member of the Burger family.

▆▆▆ The buy-sell agreement affords the corporation, not the shareholder, the first right to purchase stock. Except in exceptional circumstances, none of which are applicable here, *Marcovich v. O'Brien, Auditor* (1916), 63 Ind.App. 101, 114 N.E. 100, the general rule is that a shareholder may not maintain an action to redress a wrong to the corporation even if the value of the shareholder's interest is impaired by the injury. Unless there exists a separate and distinct duty owed the shareholder and a breach of that duty, the cause of action cannot be asserted by the shareholder. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 161. Therefore, appellant may not assert the injury to the corporation or the diminution of the value of her stock thereby.

▆▆▆ On her own behalf, Linda argues that the distributive provisions for the stock do not effect a final division as contemplated by the statute. The distribution of the assets to one spouse subject to installment payments to the other is specifically provided by the statute, IND.CODE § 31–1–11.5–11(b), and this Court has held that statutory provision to cover a situation whereby business assets are set aside for one spouse with a cash award over time to the other as long as there is a rational basis for such arrangement. *In re Marriage of Davis supra*, 182 Ind.App. 342, 395 N.E.2d 1254, *reh. denied*. Certainly a rational basis for such arrangement is found in the very nature of the asset here involved, stock in a close corporation the shareholders and officers of which are members of the wife's family. The statutes further provide for the court to re-quire security to assure division of the property. IND.CODE § 31–1–11.5–15. The holding of the stock in this case is nothing more than such a security measure. Therefore the basic arrangement for the stock distribution is proper. However, the trial court states that in the event of default "the Clerk shall enter judgment" in an amount equal to the unpaid amount ordered paid for the stock. Judgment means all final orders, decrees and determinations in an action; also all orders upon which executions may issue. IND.CODE § 34–1–67–1(11). A judgment is a decision by a court concerning a controversy between parties. *Picklesimer v. Heltzel, Guardian, etc.* (1962), 133 Ind.App. 83, 180 N.E.2d 132.

> "The clerk of a court is an officer who records the proceedings of the court and has custody of its records. A record which shows judgment rendered by the clerk of a court does not sustain the allegation of a judgment rendered by a court of general jurisdiction." (Citations omitted.)

> *Citizens State Bank v. Read et al.* (1910), 45 Ind.App. 158, 160, 90 N.E. 492.

Therefore the clerk has no authority or power to render a judgment and the order of the trial court is in error to the extent it purports to authorize the clerk to do so.

▆▆▆ Because the trial court is vested with discretion in determining the disposition of property, when a basis for the exercise of that discretion is found to be erroneous, the appellate court must reverse and remand the cause, it being merely conjecture to assume the trial court would exercise its discretion in the same manner based on different reasons. *In re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171, *reh. denied, trans. denied*.

Reversed and remanded for a new trial on the distribution of property.

STATON, P.J., and GARRARD, J., concur.