**F.B.I. FARMS, INC., Ivan Burger, Freddy L. Burger, Susan Burger Eash, and Linda Moore, Appellants–Defendants,**

**v.**

**Birchell MOORE, Appellee–Plaintiff.**

No. 76A03–0201–CV–24.

Court of Appeals of Indiana.

June 12, 2002.

J. Richard Ransel, Jacob S. Frost, Thorne Grodnik & Ransel, Elkhart, IN, Attorneys for Appellants.

Leonard E. Eilbacher, Eilbacher Scott PC, Fort Wayne, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

F.B.I. Farms, Inc., Ivan W. Burger, Freddy L. Burger, Susan Burger Eash, and Linda Burger Moore ("Linda") appeal the trial court's grant of partial summary judgment to Birchell Moore ("Moore") on Moore's complaint for declaratory judgment. F.B.I. Farms raises two issues, which we restate as follows:

1. Whether restrictions on the transfer of F.B.I. Farms's stock were required to be honored prior to the stock being sold at the sheriff's sale; and

2. Whether the trial court erred by determining that certain restrictions on the alienation of F.B.I. Farms's stock were unenforceable.

We affirm.

The facts most favorable to the nonmovants follow. Moore was married to Linda, daughter of Ivan Burger. In 1976, Ivan Burger, Freddy Burger and Moore, along with their wives, incorporated F.B.I. Farms. Each couple deeded their farms and transferred their farm machinery to the corporation in exchange for common stock. Moore and Linda deeded a 180–acre parcel of real estate in exchange for their stock. After incorporation, Moore held 2,507 shares of stock in the corporation and Linda held 1 share of stock. Linda's father, Ivan Burger, later gave her an additional 417 shares of stock. As a director of the corporation, Moore was present at a meeting conducted in 1977 where the following restrictions on the transfer of shares were adopted:

1) [N]o stock of said corporation shall be transferred, assigned and/or exchanged or divided, unless or until approved by the Directors thereof;

2) That if any stock be offered for sale, assigned and/or transferred, the corporation should have the first opportunity of purchasing the same at no more than the book value thereof;

3) Should said corporation be not interested, and could not economically offer to purchase said stock, any stockholder of record should be given the next opportunity to purchase said stock, at a price not to exceed the book value thereof;

4) That if the corporation was not interested in the stock, and any stockholders were not interested therein, then the same could be sold to any blood member of the family. Should they be desirous of purchasing the same, then at not more than book value thereof.

Appellant's Appendix at 167–168.

Linda filed a petition for dissolution of her marriage to Moore in 1982. The divorce proceedings were the subject of a

prior appeal to this court. *See Moore v. Moore*, 482 N.E.2d 1176 (Ind.Ct.App.1985). In the divorce proceedings, Linda was awarded all of the shares of stock in the corporation and Moore was awarded a judgment against Linda in the amount of $155,889.80 secured by a lien on Linda's stock in the corporation. *Id.* at 1181.

F.B.I. Farms experienced financial difficulties and filed for bankruptcy protection in 1989. F.B.I. Farms remained in bankruptcy until 1991. Linda failed to pay the judgment amount, and Moore sought to execute his lien upon Linda's stock in 1993. In 1999, after a writ of execution was issued, F.B.I. Farms sought to avoid the execution by attempting to cancel the 2,507 shares of stock for Moore's alleged nonpayment of the subscription price. However, on February 16, 2000, Linda's stock was sold at a sheriff's sale. Moore purchased the stock for $290,450.67. On December 27, 2000, Moore filed a complaint for declaratory judgment, injunctive relief, and damages against F.B.I. Farms. Moore sought a declaratory judgment regarding the purported cancellation of the shares, the ownership of the shares, and the transferability of the shares.

Moore filed a motion for partial summary judgment. The trial court entered findings of fact and conclusions thereon and granted the motion for partial summary judgment. The trial court held that the "disputed shares of stock were not lawfully cancelled by the efforts of the directors of [F.B.I.] Farms at its special meeting of directors held on September 23, 1999." Appellant's Appendix at 35. The trial court further held that Moore was the "lawful owner" of the disputed stock. *Id.* at 38. Additionally, the trial court concluded that the restriction requiring director approval of stock transfers was "manifestly unreasonable" in this case and the restriction requiring that the stock be

offered to "any blood member of the family" was also "manifestly unreasonable." *Id.* at 37. The trial court then determined that no just reason for delay existed and entered final judgment pursuant to Ind. Trial Rule 54(B).

Our standard of review when considering the grant or denial of a summary judgment motion is well settled. An appellate court faces the same issues that were before the trial court and follows the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001). Summary judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 909; *see also* Ind. Trial Rule 56(C). We must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* at 908. When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.*

Where a trial court enters findings of fact and conclusions thereon in granting the motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review for a sum-

mary judgment. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

## I.

The first issue is whether restrictions on the transfer of F.B.I. Farms's stock were required to be honored prior to the stock being sold at the sheriff's sale. The parties present no genuine material issues of fact with respect to this issue. Rather, F.B.I. Farms argues that the trial court erred in determining that Moore was entitled to summary judgment as a matter of law.

■ F.B.I. Farms argues that Moore should have been required to honor the restrictions on the alienation of the corporation's stock prior to compelling the transfer of the stock to himself by sheriff's sale. Moore points out that he did not own the shares and "had no authority to offer them for sale under any terms." Appellee's Brief at 6. He argues that the sheriff's sale was controlled by statute and not by Moore. Moreover, Moore contends that the corporation, its shareholders, and blood family members had statutory notice of the sale and "[t]here is no showing that [F.B.I. Farms] took any steps to enforce the restrictions at the sale" or "contested the sale in any fashion." *Id.* at 6–7. We agree with Moore that prior to the sale he did not own the shares and had no authority to require that the shares be sold in compliance with the transfer restrictions. Even though seven years elapsed between the time that Moore first filed a motion for a proceeding supplemental and the time that Linda's shares were sold at the sheriff's sale, F.B.I. Farms failed to attempt to enforce the restrictions despite its knowledge of the action.

Moreover, even if F.B.I. Farms had attempted to enforce the restrictions, its argument that the transfer restrictions should have been followed still fails. Restrictions on the transfer of shares are authorized by Ind.Code § 23–1–26–8(a), which provides in pertinent part that "[t]he articles of incorporation, bylaws, an agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of any class or series of shares of the corporation." However, few Indiana cases have discussed the validity of such restrictions. *See, e.g., Doss v. Yingling*, 95 Ind.App. 494, 500–504, 172 N.E. 801, 803–804 (1930) (discussing the validity of a transfer restriction which required the stockholder to give the other stockholders of the corporation the first "right" to purchase the stock); *State v. Clarks Hill Tel. Co.*, 139 Ind.App. 507, 509–512, 218 N.E.2d 154, 156–157 (1966) (discussing the validity of a transfer restriction which required the stockholder to give the corporation the first option to purchase the stock).

Although Indiana courts have not considered the specific issue in this case—whether shares may be involuntarily transferred by operation of law in violation of a corporation's transfer restrictions—other jurisdictions have approved the involuntary transfer of stock in certain circumstances. As a general rule, "restrictions on the sale of corporate stock apply only to voluntary sales, and not to transfers by operation of law, such as testamentary disposition, in the absence of a specific provision to that effect." 18 C.J.S. *Corporations* § 220 (1990); *see also Castonguay v. Castonguay*, 306 N.W.2d 143, 145 (Minn. 1981); *In re Marriage of Devick*, 315 Ill. App.3d 908, 248 Ill.Dec. 833, 735 N.E.2d

153, 162 (2000); *Bryan–Barber Realty, Inc. v. Fryar*, 120 N.C.App. 178, 461 S.E.2d 29, 32 (1995); F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations*, §§ 7.15, 7.17, 7.18 (3rd ed.1998).

For example, in *Castonguay*, the Minnesota Supreme Court held that while Minnesota favored stock transfer restrictions in close corporations, "any restriction on transfer of stock must be explicitly worded." *Castonguay*, 306 N.W.2d at 145. The court noted that involuntary transfers "are not included within a transfer restriction clause unless the contrary conclusion is inescapable." *Id.* Because the transfer restriction agreement in that case did not specifically apply to involuntary transfers, the trial court's decree ordering the transfer of shares from the husband to the wife was effective. *Id.* at 146. However, the supreme court ordered that the shares be placed in a voting trust "to lessen discord in the management of the corporation's affairs." *Id.*

■ F.B.I. Farms urges us to follow the lead of courts upholding transfer restrictions despite the failure to include language in the restrictions regarding applicability to involuntary transfers. *See* Appellant's Brief at 10–16 (citing, for example, *Crow v. Crow*, 1987 WL 7920 (Ohio Ct.App.1987); *Casady v. Modern Metal Spinning & Mfg. Co.*, 188 Cal.App.2d 728, 10 Cal.Rptr. 790 (1961)). However, we find the rule requiring strict construction of transfer restrictions more persuasive and in line with Indiana precedent. Generally, "[r]egulation of the alienation of corporate stock is a restraint on the alienation of property and is against public policy." *Doss*, 95 Ind.App. at 500, 172 N.E. at 803. Such restraints are strictly construed by courts. *See, e.g., Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.*, 492 N.E.2d 686, 688 (Ind.1986) (holding that covenants not to compete are in restraint

of trade and are strictly construed); *Campbell v. Spade*, 617 N.E.2d 580, 583 (Ind.Ct.App.1993) (holding that restrictive covenants are disfavored in the law and strictly construed by the courts, and all doubts should be resolved in favor of the free use of property and against restrictions). Thus, the corporation's restrictions on the transfer of stock should be strictly construed and "a restrictive provision on a stock transfer is inoperative as to a particular transfer unless the restriction specifically applies to that transfer...." 18 C.J.S. *Corporations* § 220 (1990).

In this case, F.B.I. Farms's transfer restrictions fail to mention involuntary transfers or transfers by operation of law. Thus, the transfer restrictions did not apply to the involuntary transfer of Linda's shares through a sheriff's sale. *See, e.g., Castonguay*, 306 N.W.2d at 146. Therefore, the trial court did not err by determining that Moore is the proper owner of the shares purchased at the sheriff's sale.

## II.

The next issue is whether the trial court erred by determining that certain restrictions on the alienation of F.B.I. Farms's stock were unenforceable. However, prior to determining whether the restrictions are enforceable, we must first determine whether future transfers of the shares by Moore require compliance with the transfer restrictions at all. Moore appears to concede that further transfers of the shares are subject to reasonable restrictions. F.B.I. Farms does not address the issue.

■ Generally, after an involuntary transfer of stock, future transactions remain subject to the restrictions. *See, e.g.,* 18 C.J.S. *Corporations* § 220 (1990) ("[A]lthough an executor's title to stock in an estate is acquired by operation of law, any further transfer of stock, either to the

specific legatees of the stock or to others, is subject to any restrictions on the transfer of such stock . . . ."); *cf. Devick,* 735 N.E.2d at 162 (holding that "the restriction does not apply to any subsequent transfers by [the wife] because the language of the affiliate agreements does not specifically include such a provision and because [the wife] neither joined in the agreements nor waived her interest in the stock.").

In this case, a requirement that future transactions by Moore comply with the transfer restrictions is supported by *Clarks Hill Tel.,* 139 Ind.App. at 510, 218 N.E.2d at 156. In *Clarks Hill Tel.,* a purchaser of stock attempted to avoid the application of transfer restrictions by arguing that "any restriction on the transfer of shares of stock must be printed upon the face of said certificates to be legally valid." *Id.; see also* Ind.Code § 23–1–26–8(b).[1] However, we held that the requirement that the restrictions be printed upon the face of the certificates was intended to protect purchasers without knowledge of the conditions. *Id.* The purchaser at issue "by his own admissions, knew of the existence of the restrictions, but continued to

purchase more shares . . . ." *Id.* Thus, the transfer restrictions were applicable. *Id.*

Similarly, in this case, Moore was on the board of directors when the restrictions were established. Thus, when Moore purchased the shares at the sheriff's sale, he had knowledge of the restrictions. Based upon Moore's apparent concession that the restrictions are applicable and his knowledge of the restrictions before purchasing the shares at the sheriff's sale, we assume that further transfers of the shares are subject to valid restrictions.[2]

We must now determine whether the transfer restrictions at issue are valid under Ind.Code § 23–1–26–8.[3] Moore concedes that the following two transfer restrictions are applicable to future transfers of his stock in F.B.I. Farms: (1) "That if any stock be offered for sale, assigned and/or transferred, the corporation should have the first opportunity of purchasing the same at no more than the book value thereof;" and (2) "Should said corporation be not interested, and could not economically offer to purchase said stock, any stockholder of record should be given the next opportunity to purchase said stock, at a price not to exceed the book value there-

---

1. Ind.Code § 23–1–26–8(b) provides that:

   A restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this section and its existence is noted conspicuously on the front or back of the certificate or is contained in the information statement required by section 7(b) of this chapter. Unless so noted, a restriction is not enforceable against a person without knowledge of the restriction.

2. We express no opinion as to whether a purchaser of stock at a sheriff's sale without knowledge of the transfer restrictions would be subject to such restrictions in future transfers of the shares.

3. Ind.Code § 23–1–26–8(d) provides that:

   A restriction on the transfer or registration of transfer of shares may, among other things:
   (1) obligate the shareholder first to offer the corporation or other persons (separately, consecutively, or simultaneously) an opportunity to acquire the restricted shares;
   (2) obligate the corporation or other persons (separately, consecutively, or simultaneously) to acquire the restricted shares;
   (3) require the corporation, the holders of any class of its shares, or another person to approve the transfer of the restricted shares, if the requirement is not manifestly unreasonable; or
   (4) prohibit the transfer of the restricted shares to designated persons or classes of persons, if the prohibition is not manifestly unreasonable.

of." ·Appellant's Appendix at 167–168. However, the trial court held that the following two transfer restrictions were manifestly unreasonable: (1) "[N]o stock of said corporation shall be transferred, assigned and/or exchanged or divided, unless or until approved by the ·Directors thereof;" and (2) "That if the corporation was not interested in the stock, and any stockholders were not interested· therein, then the same ·could be sold to any blood member of the family. Should they be desirous of purchasing the same, then at not more than book value thereof." *Id.* We address the two restrictions separately.

## A.

■ We first address the restriction requiring approval of F.B.I. Farms's directors before stock of the corporation may be "transferred, assigned and/or exchanged or divided." *Id.* at 167. Ind. Code § 23–1–26–8(d)(3) provides, in relevant part, that a restriction on the transfer or registration of transfer of shares may "require the corporation, the holders of any class of its shares, or another person to approve the transfer of the restricted shares, if the requirement is not manifestly unreasonable." In the present case, the trial court held that the "restriction is not, on its face, unreasonable in nature." Appellant's Appendix at 36. However, as applied to the "tumultuous and undisputed factual history of this case," the trial court determined that the restriction was "manifestly unreasonable." *Id.*

The undisputed facts in this case support the trial court's determination that the consent restriction is manifestly unreasonable under these circumstances. The

dispute between the parties spans two decades. Moore was an original incorporator of the corporation in 1976. The difficulties between F.B.I. Farms and Moore appear to have begun in 1982 when Linda filed a petition for dissolution of her marriage to Moore. As a result of the dispute, Moore left the employment of F.B.I Farms.[4] In the divorce proceedings, Linda was awarded all of the shares of stock in the corporation and Moore was awarded a judgment against Linda in the amount of $155,889.80 secured by a lien on Linda's stock in the corporation. *Moore,* 482 N.E.2d at 1181. Linda argued to this court in an appeal of the divorce proceedings that the distribution of stock was not just and reasonable because it was in derogation of the transfer restrictions. *Id.* However, we held that Linda, as a shareholder, could not maintain an action to redress a wrong to the corporation. *Id.*

The corporation filed for bankruptcy protection because of financial difficulties. F.B.I. Farms argues that the Burger family sacrificed and saved the corporation. Even though Moore did not own any shares in the corporation at that time, F.B.I. Farms argues that Moore did not help or contribute in any way to save F.B.I. Farms.

When Linda did not pay the judgment amount, Moore sought to execute his lien upon the corporation's stock. A writ of execution was issued in 1999. F.B.I. Farms responded by attempting to cancel the 2,507 shares of stock for Moore's alleged nonpayment of the subscription price in spite of Moore's 1976 contribution of a 180–acre farm to the corporation in exchange for the stock. However, execution

---

**4.** Moore states that his was involuntarily terminated from his employment, while F.B.I. Farms states that Moore "walked away from F.B.I. Farms." Appellant's Appendix at 58. However, whether Moore was involuntarily terminated or left his employment voluntarily is irrelevant to the issues in this case. The parties presented no evidence that Moore's continued employment with F.B.I. Farms was a condition for ownership of stock.

on the stock proceeded, and on February 16, 2000, Moore purchased Linda's stock at a sheriff's sale for $290,450.67. Moore then filed the instant lawsuit for declaratory judgment, injunctive relief, and damages against F.B.I. Farms.

Given the undisputed two decades of turmoil between Moore, F.B.I. Farms, and the Burger family, the trial court did not err in determining that the restriction requiring Moore to obtain approval of F.B.I. Farms's directors before transferring, assigning, exchanging, or dividing his stock would be manifestly unreasonable and unenforceable in this case. *See, e.g., Castriota v. Castriota,* 268 N.J.Super. 417, 633 A.2d 1024, 1028 (Ct.App.Div.1993) (holding that a transfer restriction which was "total and absolute" was unreasonable and against public policy). Thus, the trial court did not err by granting summary judgment to Moore on this issue.

## B.

We now address the transfer restriction that requires shares to be offered to "any blood member of the family" if the corporation and other stockholders do not wish to purchase the shares. Appellant's Appendix at 168. Ind.Code § 23–1–26–8(d)(1) provides that a restriction on the transfer or registration of transfer of shares may "obligate the shareholder first to offer the corporation or other persons (separately, consecutively, or simultaneously) an opportunity to acquire the restricted shares."

■ Here, the trial court held that a "restriction on the transferability of shares to limit same to family members can, under appropriate circumstances, be a reasonable restriction." Appellant's Appendix at 37. However, the trial court noted a problem with the language utilized by F.B.I. Farms:

The problem in using generic language "blood members of the family", without limitation, is that in many cases [it] will be impossible to determine if the restriction on transfer has ever been satisfied. If one cares to trace one's family history it can easily be determined that he or she would have hundreds if not thousands of blood relatives the majority of which, without a formal genealogical history having previously been conducted, would be heretofore unknown. Once it should be discovered, following an exhaustive search, that there exists a heretofore unknown fourth cousin living in Denmark, is it reasonable to require a shareholder desiring to transfer his stock to notify this individual of his right to purchase this stock prior to transfer to a non-family member?

*Id.* The trial court held that "[s]uch a requirement would be, and is in the case at bar, manifestly unreasonable." *Id.* Although the trial court held that the transfer restriction is "manifestly unreasonable" in this case, Ind.Code § 23–1–26–8(d)(1) contains no provision that the transfer restriction be permitted unless "manifestly unreasonable." *Cf.* Ind.Code § 23–1–26–8(d)(3). Rather, the statute specifically permits restrictions that obligate the shareholder first to offer the corporation or other persons an opportunity to acquire the restricted shares. *See* I.C. 23–1–26–8(d)(1).

■ However, even though the statute does not contain the "manifestly unreasonable" limiting language, transfer restrictions are strictly construed. Thus, if the transfer restriction is ambiguous, it is unenforceable. *See, e.g.,* 18 C.J.S. *Corporations* § 220 (1990) ("Any restriction on a stockholder's right to dispose of his shares must be strictly construed in favor of transferability, and whenever there is any ambiguity or uncertainty, such a restric-

tion ought not to be enforced." (footnotes omitted)); *Burnett v. Heckelman,* 456 N.E.2d 1094, 1097 (Ind.Ct.App.1983) ("[If] a [restrictive] covenant is ambiguous or in some manner violative of public policy, it may not be sustained."). The transfer restriction is ambiguous only if reasonable people reading the restriction would differ as to the meaning of the terms. *See, e.g., Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1064 (Ind.Ct.App.1997).

In this case, the phrase "any blood member of the family" is not defined in the agreement and is ambiguous. It is unclear which "family" is referred to in the phrase. Interestingly, even assuming that the phrase means any blood member of the Burger family, some of the initial shareholders, including Moore, were not blood members of the "family." Moreover, the meaning of the phrase "blood member" is unclear. As the trial court pointed out, does this require Moore to perform an extensive genealogical history search and notify "hundreds if not thousands of blood relatives" of his desire to sell the stock? Appellant's Appendix at 37. Clearly, reasonable minds could differ as to the meaning of the phrase "any blood member of the family." Because the transfer restriction requiring shares to be offered to "any blood member of the family" if the corporation and other stockholders do not wish to purchase the shares is ambiguous, the restriction is unenforceable. Thus, the trial court did not err by granting summary judgment to Moore on this issue.

In summary, we conclude that the transfer restrictions did not apply to the involuntary transfer of Linda's shares through a sheriff's sale. Moreover, the trial court did not err by determining that: (1) the restriction requiring Moore to obtain approval of F.B.I. Farms's directors before transferring, assigning, exchanging, or dividing his stock is manifestly unreasonable and unenforceable under these circumstances, and (2) the restriction requiring shares to be offered to "any blood member of the family" if the corporation and other stockholders do not wish to purchase the shares is ambiguous and unenforceable. However, we caution that this opinion is driven by the particular facts of this case. It should not be construed as any impediment to the use and enforcement of permitted and clearly expressed restrictions on the transfer of shares of stock. Such restrictions serve legitimate purposes related to the ownership of stock, but must be prepared with thoroughness and care.

For the foregoing reasons, we affirm the judgment of the trial court granting partial summary judgment to Moore.

Affirmed.

FRIEDLANDER, J., and BROOK, C.J., concur.