F.B.I. FARMS, INC., Ivan Burger, Freddy L. Burger, Susan Burger Eash, and Linda Moore, Appellants (Defendants below),

v.

Birchell MOORE, Appellee (Plaintiff below).

No. 76S03–0209–CV–491.

Supreme Court of Indiana.

Nov. 13, 2003.

J. Richard Ransel, Jacob S. Frost, Elkhart, IN, Attorneys for Appellant.

Leonard E. Eilbacher, Fort Wayne, IN, Attorney for Appellee.

BOEHM, Justice.

We hold that as a general proposition, restrictions on corporate share transfers may require approval of the transfer by the corporation's Board of Directors, at least in a family-owned corporation. Although generally valid against purchasers with notice of them, such restrictions may not prevent a creditor from foreclosing a lien on the shares, but a purchaser who buys at a foreclosure sale with notice of the restrictions acquires the shares subject to the restrictions. We also hold that if

shares are subject to a right of first refusal, and the holder of the right has notice of the foreclosure, the holder cannot exercise the right against a purchaser at a foreclosure sale after the purchaser has taken title to the shares without objection from the holder of the rights.

### Factual and Procedural Background

F.B.I. Farms, Inc., was formed in 1976 by Ivan and Thelma Burger, their children, Linda and Freddy, and the children's spouses. Each of the three couples transferred a farm and related machinery to the corporation in exchange for common stock in the corporation. At the time, Birchell Moore was married to Linda. Linda and Moore deeded a jointly-owned 180–acre farm to F.B.I., and 2,507 shares were issued to Moore and one to Linda. These 2,508 shares represented approximately fourteen percent of the capitalization of F.B.I.

In 1977, the Board of Directors of F.B.I. consisted of Moore, Ivan, Freddy and Linda. The minutes of a 1977 meeting of the Board recite that the following restrictions on the transfer of shares were "adopted":

1) No stock of said corporation shall be transferred, assigned and/or exchanged or divided, unless or until approved by the Directors thereof;

2) That if any stock be offered for sale, assigned and/or transferred, the corporation should have the first opportunity of purchasing the same at no more than the book value thereof;

3) Should said corporation be not interested, and could not economically offer to purchase said stock, any stockholder of record should be given the next opportunity to purchase said stock, at a price not to exceed the book value thereof;

4) That if the corporation was not interested in the stock, and any stockholders were not interested therein, then the same could be sold to any blood member of the family. Should they be desirous of purchasing the same, then at not more than the book value thereof.

Linda's marriage to Moore was dissolved in 1982. As part of the dissolution proceedings, Linda was awarded all of the F.B.I. shares and Moore was awarded a monetary judgment in the amount of $155,889.80, secured by a lien on Linda's shares.

F.B.I. filed for bankruptcy protection in 1989 and emerged from Chapter 11 Bankruptcy in 1991. Moore's judgment against Linda remained unsatisfied, and in April 1998 he sought a writ of execution of his lien. The corporation, through its counsel, responded with a letter to Moore's counsel demanding payment of the $250,700 subscription price for the 2,507 shares that were initially issued to Moore but had since been transferred to Linda. Moore obtained the writ of execution in June 1999, and in October 1999 the corporation, again through counsel, sent a letter to Moore purporting to cancel the 2,507 shares for failure to pay the subscription price. A sheriff's sale went forward and in February 2000 Moore purchased all 2,924 shares owned by Linda at the time for $290,450.67.

In December 2000 Moore instituted this suit against F.B.I., its shareholders, and Linda seeking a declaratory judgment that the attempted cancellation of the shares by the defendants was invalid, that Moore properly retained ownership of the shares, and that the shares were unencumbered by restrictions and were freely transferable. Moore also sought dissolution of the corporation, injunctive relief against alleged fraudulent practices by the defendants, and monetary damages. The trial court granted Moore's motion for partial summary judgment, finding (1) the shares

were not "lawfully cancelled"; (2) Moore was the "lawful owner" of the disputed stock; (3) the restriction in paragraph one of the agreement requiring approval by F.B.I.'s directors for a share transfer was "manifestly unreasonable"; and, (4) the provision in paragraph four of the agreement giving "blood members" the option to purchase after the corporation and shareholders was "manifestly unreasonable" and unenforceable. The trial court's findings included those rendering the order appealable as a final judgment pursuant to Indiana Trial Rule 54(B).

On appeal, the Court of Appeals held that the transfer restrictions barred only voluntary transfers. *F.B.I. Farms, Inc. v. Moore*, 769 N.E.2d 688, 696 (Ind.Ct.App. 2002). Because the sheriff's sale effectuated an involuntary transfer of Linda's shares, Moore, as the purchaser of the shares, acquired the shares. *Id.* at 692. Although the court found that future transfers of stock would be subject to the restrictions in Moore's hands, it also affirmed the trial court's finding that the two disputed restrictions were manifestly unreasonable. *Id.* at 695–96. The court reasoned that the several tumultuous years of dispute between the parties rendered the restriction requiring director approval before transfer unreasonable, and the reference to "blood members" of the family was sufficiently ambiguous that that restriction was unenforceable. *Id.* at 694–96. We granted transfer.

### Standard of Review

■ To support an order granting a motion for summary judgment, the designated evidence must show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court. *Bemenderfer v. Williams*, 745 N.E.2d 212, 215 (Ind.2001).

### I. Transfer Restrictions

#### A. General Principles

Most of the issues in this case are resolved by the Indiana statute governing share transfer restrictions. Indiana Code section 23–1–26–8 essentially mirrors Model Business Corporation Act § 6.27, which authorizes restrictions on the transfer of shares. The Indiana statute reads as follows:

(a) The articles of incorporation, bylaws, an agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of any class or series of shares of the corporation. A restriction does not affect shares issued before the restriction was adopted unless the holders of the shares are parties to the restriction agreement or voted in favor of the restriction.

(b) A restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this section and its existence is noted conspicuously on the front or back of the certificate or is contained in the information statement required by section 7(b) [Ind.Code 23–1–26–7(b) ] of this chapter. Unless so noted, a restriction is not enforceable against a person without knowledge of the restriction.

(c) A restriction on the transfer or registration of transfer of shares is authorized:

(1) to maintain the corporation's status when it is dependent on the number or identity of its shareholders;

(2) to preserve exemptions under federal or state securities law; or

(3) for any other reasonable purpose.

(d) A restriction on the transfer or registration of transfer of shares may, among other things:

(1) obligate the shareholder first to offer the corporation or other persons (separately, consecutively, or simultaneously) an opportunity to acquire the restricted shares;

(2) obligate the corporation or other persons (separately, consecutively, or simultaneously) to acquire the restricted shares;

(3) require the corporation, the holders of any class of its shares, or another person to approve the transfer of the restricted shares, if the requirement is not manifestly unreasonable; or

(4) prohibit the transfer of the restricted shares to designated persons or classes of persons, if the prohibition is not manifestly unreasonable. . . .

■■■■ Corporate shares are personal property. At common law, any restriction on the power to alienate personal property was impermissible. *Doss v. Yingling,* 95 Ind.App. 494, 500, 172 N.E. 801, 803 (1930). Despite this doctrine, Indiana, like virtually all jurisdictions, allows corporations and their shareholders to impose restrictions on transfers of shares. The basic theory of these statutes is to permit owners of a corporation to control its ownership and management and prevent outsiders from inserting themselves into the operations of the corporation. *Id.* at 502–03, 172 N.E. 801; 12 William Meade Fletcher et al, *Fletcher Cyclopedia of the Law of Private Corporations,* § 5454 (1996). Chief Justice Holmes stated the matter succinctly a century ago: "Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. . . . [T]here seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm." *Barrett v. King,* 181 Mass. 476, 63 N.E. 934, 935 (1902). As applied to a family-owned corporation, this remains valid today.

■■■■ Transfer restrictions are treated as contracts either between shareholders or between shareholders and the corporation.[1] *Doss,* 95 Ind.App. at 502, 172 N.E. at 803; *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (the validity and enforcement of restrictions are governed by state law just like any other contract); *Boston Safe Deposit & Trust Co., et al. v. North Attleborough Chapter of the Am. Red Cross, et al.,* 330 Mass. 114, 111 N.E.2d 447, 449 (1953) (restrictions in the articles of organization are binding on a shareholder by reason of the contract made with the corporation when she accepted the certificates of stock containing the printed restrictions). Apart from any statutory requirements, restrictions on transfer are to be read, like any other contract, to further the manifest in-

---

1. The Indiana statute provides that restrictions are valid if included in the articles, the bylaws, an agreement among shareholders or an agreement between the corporation and shareholders. I.C. § 23–1–26–8(a) (1998). None of these was done here. However, no one challenges the restrictions as defective in their initial adoption. At least as to Moore, who approved them as a director and had actual knowledge of them, under these circumstances, the restrictions constitute a contract as to all of those shareholders who approved the adoption of the restrictions. *Shortridge v. Platis,* 458 N.E.2d 301, 304 (Ind. Ct.App.1984) (a buy-sell restriction is analyzed by the court as a contract); 18A Am. Jur.2d *Corporations* § 687 (1985) (courts sustain a restriction whether valid as a bylaw or not, on the ground that it constitutes a valid agreement between the stockholders and the corporation, particularly as applied to stockholders who assent to, or participate in, the adoption of the bylaw).

tention of the parties. Because they are restrictions on alienation and therefore disfavored, the terms in the restrictions are not to be expanded beyond their plain and ordinary meaning. 12 Fletcher § 5455 (1996).

█ For a party to be bound by share transfer restrictions, that party must have notice of the restrictions. I.C. § 23–1–26–8(b) (1998). Here, the restrictions on transfer of F.B.I. shares were neither "noted conspicuously" on the certificates nor contained in the information statement referred to in Indiana Code 23–1–26–8(b), but there is no doubt that Moore, the buyer at the sheriff's sale, had notice of the restrictions. He was therefore bound by them. *State ex rel. Hudelson v. Clarks Hill Tel. Co.*, 139 Ind.App. 507, 510, 218 N.E.2d 154, 156 (1966).

█ Finally, a closely held corporation is a "corporation in which all of the outstanding stock is held by just a few individuals, or by a small group of persons belonging to a single family." J.R. Kemper, *Validity of "Consent Restraint" on Transfer of Shares of Close Corporation*, 69 A.L.R.3d 1327, 1328 (1976). In 1977, F.B.I. plainly fell within that description; it was owned by six individuals, all members of a single family. Closely held corporations have a viable interest in remaining the organization they envision at incorporation and transfer restrictions are an appropriate means of maintaining the status quo.

### B. Rights of First Refusal

█ Paragraphs (2) and (3) of the restrictions created rights of first refusal in F.B.I. and its shareholders. A transfer in violation of restrictions is voidable at the insistence of the corporation. *Groves v. Prickett*, 420 F.2d 1119, 1122 (9th Cir. 1970). F.B.I. and its shareholders argue that Moore should have been obliged to offer the shares to the corporation or a shareholder pursuant to those provisions. Moore responds, and the Court of Appeals agreed, that he was not a shareholder until he purchased the shares at the sheriff's sale. He contends he therefore had no power to offer the shares. This misses the point that before Linda could transfer her shares, she was obliged to offer them to F.B.I. and the other shareholders. Moore was on notice of that requirement. Moore, as the buyer, had the right to demand that Linda initiate the process to exercise or waive the right to first refusal.

█ Thus, if the corporation had insisted on its right of first refusal, Linda would have been obliged to sell to F.B.I. (or its shareholders). And Moore, as a buyer on notice of the restrictions, had the right to insist that that process go forward. But the corporation and its shareholders were aware of the sheriff's sale and did nothing to assert the right of first refusal. They cannot sit back and let the sale go forward, await future events, then claim a right to purchase on the same terms as Moore. *McCroden v. Case*, 602 N.W.2d 736, 743–44 (S.D.1999) (transfer restriction is waived by stockholder's failure to exercise "first option" preemptive rights); *Calton v. Calton*, 118 N.C.App. 439, 456 S.E.2d 520, 523 (1995) (no justiciable controversy existed where no shareholder exercised the right to purchase stock, intended to exercise the right, or was even financially able to do so at the time the action was filed; shareholders waived any right to object to the transfers where they had knowledge of both the testators death and the restrictions contained on the stock certificates, no shareholder asked to purchase any of the stock, and shareholders waited eighteen months to file an action); *Puro v. Puro*, 40 A.D.2d 784, 337 N.Y.S.2d 586, 587 (N.Y.App.Div. 1972) (transfer restrictions are not self-executing). In sum, F.B.I. and its share-

holders had rights of first refusal, but failed to exercise them. As a result, the sale to Moore proceeded as if the shares had been offered and the corporation refused the opportunity. To hold otherwise would be to give F.B.I. and its shareholders a perpetual option to purchase but no obligation to do so. Having failed to demand their right to buy at the time of the sale, the rights of first refusal gave them no ability to upset the sale conducted by the sheriff.

### C. Restrictions on Transfer with Board Approval

 The restrictions "adopted" in paragraphs (1) and (4) are more problematic. Indiana's statute, reflecting the common law, requires that restrictions on share transfers be reasonable. I.C. § 23–1–26–8(c)(3), (d)(3), and (d)(4). The general common law doctrine surrounding evaluation of the reasonableness of restrictions is well established. A restriction is reasonable if it is designed to serve a legitimate purpose of the party imposing the restraint and the restraint is not an absolute restriction on the recipient's right of alienability. Bernard F. Cataldo, *Stock Transfer Restrictions and the Closed Corporation*, 37 Va. L.Rev. 229, 232–33 (1951). The Indiana statute is somewhat more generous in allowing restrictions on classes of buyers unless "manifestly unreasonable." I.C. 23–1–26–8(d)(4). Several factors are relevant in determining the reasonableness of any transfer restriction, including the size of the corporation, the degree of restraint upon alienation; the time the restriction was to continue in effect, the method to be used in determining the transfer price of shares, the likelihood of the restriction's contributing to the attainment of corporate objectives, the possibility that a hostile stockholder might injure the corporation, and the probability of the restriction's promoting the best in-

terests of the corporation. 18A Am.Jur.2d *Corporations* § 683 (1985). At one extreme, a restriction that merely prescribes procedures that must be observed before stock may be transferred is not unreasonable. *State ex rel. Howland v. Olympia Veneer Co.*, 138 Wash. 144, 244 P. 261 (1926). At the other end of the spectrum, restrictions that are fraudulent, oppressive, unconscionable, *Tourtelott v. Chestnuts Salon*, No. 00–5496 2001 R.I.Super. LEXIS 19 at * 6 (R.I. Sup.Ct. Jan. 17, 2001), 2001 WL 91393, or the result of a breach of the fiduciary duty that shareholders in a close corporation owe to one another, will not be upheld. *Cressy v. Shannon Cont'l Corp.*, 177 Ind.App. 224, 378 N.E.2d 941, 945 (1978); 12 Fletcher § 5455 (1996). The restrictions on F.B.I.'s shares, like most, are somewhere in the middle. They impose substantive limitations on transfer, but are not alleged to be the result of fraud or breach of fiduciary duty.

 The trial court, in its order granting partial summary judgment, concluded that the restriction precluding transfer without Board approval was reasonable at the time that it was adopted, but the lengthy and difficult history between the parties had rendered the restriction unreasonable. Under basic contract law principles, the reasonableness of a term of a contract is evaluated at the time of its adoption. *First Fed. Sav. Bank v. Key Mkts.*, 559 N.E.2d 600, 603 (Ind. 1990). The same is true of share transfer restrictions. As a result, evaluating the reasonableness of the restrictions in light of subsequent developments is inappropriate. For that reason, we do not agree that the restriction requiring director approval became unreasonable based upon events and disputes within the family that occurred after the restrictions had been adopted. To be sure, the parties find

themselves in a difficult dispute as is sometimes the case in a family business following a dissolution. But when F.B.I. was formed and the family farms were effectively pooled, the shareholders agreed that the Board would be permitted to restrict access to the shares. To the extent that restriction devalues the shares in the hands of any individual shareholder by reason of lack of transferability, it is the result of the bargain they struck. The policy behind enforcement of these restrictions is to encourage entering into formal partnerships by permitting all parties to have confidence they will not involuntarily end up with an undesired co-venturer. Presumably for that reason, the statute permits a restriction that requires a transferee to be approved by the Board of Directors, and to that extent may severely limit transferability.

A "consent restriction" such as this has been considered unreasonable by some courts. 2 Cox, Hazen, O'Neal *Corporations* § 14.10 (2002); Harry G. Henn & John R. Alexander, *Laws of Corporations*, § 281 (1983). However, the General Assembly has allowed precisely this type of restriction in Indiana Code section 23–1–26–8(d)(3). That section provides that transfer restrictions may require the approval of "the corporation, the holders of any class of its shares, or another person" before the shares may be transferred. Board approval is one permissible way of implementing approval by "the Corporation" under this section. *See also Wright v. Iredell Telephone Co.*, 182 N.C. 308, 108 S.E. 744, 747 (1921) (upholding a restriction requiring the approval of the corporation's directors).

**D. Restrictions on Transfer Except to "Blood Members of the Family"**

■ We also find the "blood-member" restriction to be enforceable as protecting a viable interest. *Mathews v. United States*, 226 F.Supp. 1003, 1009 (E.D.N.Y. 1964) (recognized "intact family ownership" as an interest worth protecting by a restriction). These are family farmers in corporate form. It is apparent from the nature of the corporation that the Burger family had an interest in maintaining ownership and operation of F.B.I. in the hands of family members. Although one may quibble with the terminology, and there may be some individuals where status as blood members is debatable, we think it plain enough that all parties to this dispute either are or are not blood members of the Burger family. All are either direct descendants of Ivan or spouses of Ivan or of one of his children.

## II. Attempted Cancellation of the Shares

■ F.B.I. took the position that the subscription price for Linda's shares had not been paid and therefore the shares were cancelled. The trial court rejected the claim that the shares had been cancelled. We agree that F.B.I.'s effort in 1989 to cancel the shares in the face of the impending sheriff's sale has little merit. The shares were issued in 1977 in exchange for the 180–acre farm Linda and Moore contributed to F.B.I. That is surely sufficiently substantial consideration to eliminate any claim that there was no consideration for the shares, and its initial valuation was a matter of wide discretion for the Board. I.C. § 23–1–26–2(c).

## III. Restrictions as Applied to Involuntary Transfers

The Court of Appeals held that the restrictions on Linda's shares did not apply by their terms to the sheriff's sale and, as a result, did not bar the sheriff's sale to Moore. We agree that Moore acquired the shares at the sheriff's sale, but not

because the restrictions were inapplicable by their terms.

The Court of Appeals relied on cases stating that involuntary transfers fall within the terms of a restriction only if the language of the restrictions specifically identifies them. *F.B.I. Farms*, 769 N.E.2d at 692. This doctrine has been developed largely in cases involving intestate transfers by a decedent, *Stern v. Stern*, 146 F.2d 870, 870 (D.C.Cir.1945), and in marriage dissolution proceedings where a transfer is made to a spouse. *Castonguay v. Castonguay*, 306 N.W.2d 143, 146 (Minn. 1981).

The sheriff's sale where Moore purchased Linda's shares was an involuntary transfer. Transfers ordered incident to marriage dissolutions and transfers under intestate law may also be deemed involuntary. We think the governing principle is not the same for all forms of "involuntary" transfers. The language of the restrictions in this case does not specifically refer to involuntary transfers of any kind. Rather, it seems to contemplate restricting all transfers, voluntary and involuntary, by providing that no stock of the corporation should be "transferred, assigned, exchanged, divided, or sold" without complying with the restrictions. The intent of the parties is thus rather plain: to restrict ownership to the designated group, and to preclude transfer by any means. The question is whether that intent should be permitted to prevail in the face of countervailing policies.

Transfer by intestacy is in some sense involuntary, but it may also be viewed as a voluntary act of the decedent who had the option to leave a will. If a transfer could not be made by gift during lifetime, for example, to an offspring regarded by other shareholders as an undesirable partner, we see no reason to permit it at death by the decedent's choice to die intestate. There are, however, forms of involuntary transfers that a private agreement may not prevent because the agreement would unreasonably interfere with the rights of third parties. In a dissolution, the interests of the spouse require permitting transfer over the stated intent of the parties. Similarly, creditors of the shareholder cannot be stymied by a private agreement that renders foreclosure of a lien impossible. For that reason, we agree with the trial court that the sheriff's sale transferred the shares to Moore despite the restrictions. Transfer restrictions cannot preclude transfer in a foreclosure sale and thereby leave creditors without recourse. This does not turn on a doctrine of construction. Rather we hold that requiring an explicit bar specifically naming transfer by intestacy or by testamentary disposition should not be necessary. If the language purports to bar all transfers, and by its terms would apply to intestacy, devise or any other means of transfer, it should be given effect unless the restriction violates some policy.

Although we agree with Moore that he could purchase the shares at the sale, it is also the case that he purchased the shares with knowledge of the restrictions. We conclude that he could not acquire more property rights than were possessed by Linda as his seller. U.C.C. § 8–302 (1994) (the purchaser of an investment security acquires the rights in the security his transferor had or had actual authority to convey). The shares in Linda's hands were valued with restrictions in place, and therefore it is not unfair to her creditors that a purchaser at a foreclosure sale acquire the disputed shares subject to the same restrictions, and with whatever lessened value that produces. To be sure, the effect of such a restriction may be to make the shares unmarketable to any buyer. But the creditor retains the option to bid

at the sale and, if successful, succeed to the shareholders' interest. The creditor then gets the assets the debtor used to secure the underlying obligation. If the creditor wants collateral free of restrictions, the creditor must negotiate for that at the outset of the arrangement.

### Conclusion

We affirm the trial court's ruling that F.B.I. Farms did not cancel the shares prior to the sheriff's sale where Moore reacquired them. We also uphold the trial court's finding that the transfer restrictions did not prevent the sheriff's sale, and that the transfer restrictions remain applicable to the shares in Moore's hands. We reverse the trial court's ruling that the two disputed transfer restrictions are unreasonable and therefore unenforceable, and find that the director-approval and blood-member restrictions are reasonable and enforceable. The case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

RUCKER, J., concurs in result without opinion.