Jeff PERKINS, Appellant–
Defendant/Counterclaimant,

Kessler Advisor, LLC,[1]
Defendant/Counterclaimant,

v.

James R. BROWN, Appellee–
Plaintiff/Counterclaim
Defendant

Lisa Brown and SimpsonBrown, LLC [2],
Counterclaim Defendants.

No. 49A02–0806–CV–569.

Court of Appeals of Indiana.

Feb. 16, 2009.

1. Kessler Advisor, LLC is not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

2. Although Lisa Brown and SimpsonBrown LLC were counterclaim defendants in the tri-

al court, the counterclaim was eventually dismissed, and relief is not sought from them on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

Nelson D. Alexander, Julia Blackwell Gelinas, Darren A. Craig, Frost Brown Todd, LLC, Indianapolis, IN, Attorneys for Appellant.

S. Andrew Burns, Cox, Sargeant & Burns, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

This appeal originates from a complaint for declaratory relief, accounting, and dissolution of Kessler Advisor, LLC ("Kessler"), a limited liability company ("LLC") owned by Jeff Perkins and James R. Brown. Kessler was dissolved by stipulation prior to the trial. Perkins appeals the trial court's judgment in favor of Brown in the amount of $155,175.84, representing fifty percent of the net profits and retained earnings of Kessler. He raises two issues on appeal, which we consolidate and restate as: whether the trial court erred when it entered judgment against Perkins personally without ordering an outside accounting of the finances of Kessler.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY[3]

Kessler was an executive search firm that assisted corporations with locating personnel in areas such as human resources management and information technology. Its clients included, among others, Denny's Restaurant, Infospace, and Insight. Kessler was an LLC formed in 2004, and Perkins and Brown each owned a fifty percent interest and shared the profits equally.

Perkins's primary responsibility was business development, and Brown was responsible for managing the search work, sending invoices to clients, and managing the accounting needs. Brown's wife, Lisa, assisted him with providing accounting services through May 2006. Kessler maintained its principal office in Indianapolis, where Brown was located. It also maintained an office in New York, where a Kessler employee, Adam Voth, worked. Kessler employed additional people on a contract basis to assist with performing executive searches.

In March 2006, Perkins proposed a change in the compensation system for Kessler, in which greater compensation would be given for business development than for managing and accounting services. Brown did not agree with this proposal and thought the compensation structure should remain fifty-fifty. As a result of this dispute, actions were taken which increasingly prevented Brown and Lisa from having access to information about Kessler's business, accounts, and customers. Brown's phone calls and emails to Perkins and Voth were not being answered, and by late May 2006, Brown was no longer receiving any information regarding the business. He contacted Perkins and demanded that Perkins provide

---

3. On January 15, 2009, we held oral argument in this matter at Purdue University's Krannert Graduate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, participating in post-argument discussions with the audience, and for commuting from Indianapolis. We especially thank the Krannert Graduate School of Management for their accommodations and the students in the audience for their thoughtful post-argument questions.

him with the financial data on Kessler's client accounts and invoices, but Perkins did not provide such data.

On September 5, 2006, Brown filed a complaint against Perkins and Kessler requesting declaratory judgment as to the ownership percentages of both Brown and Perkins, an equitable accounting of Kessler, and that Kessler be dissolved with the net remaining assets to be distributed according to the court-determined ownership percentages. A trial was held on August 13, 2007, which Perkins did not attend in person. Prior to the start of the trial, Perkins's counsel stipulated that Brown was a member of Kessler and a fifty percent owner and that a dissolution of Kessler should occur. At trial, Brown submitted evidence of what he believed to be an estimate of Kessler's income as of the time that he was still an active member of Kessler. He estimated that the total income Kessler should have received was $387,939.61 and then assumed, based on the historical practice of the business, that twenty percent of that amount would have been used to cover Kessler's operating expenses. That left $310,351.69 to split between Brown and Perkins for a fifty percent share of $155,175.84.

On direct examination, Brown was asked by his counsel if he wanted the court to award him $155,175.84 in exchange for his fifty percent interest in Kessler to which Perkins's counsel objected on the ground that it was outside the scope of the pleadings. The trial court did not rule on the objection and took it under advisement. The trial court ultimately granted a judgment in favor of Brown and against both Kessler and Perkins for $155,175.84. Perkins filed a motion to correct error, to which Brown filed a statement in opposition and filed his own motion to amend the complaint to conform to the evidence of Perkins's personal liability. After a hear-

ing, the trial court denied Perkins's motion to correct error and granted Brown's motion to amend the pleadings. Perkins now appeals.

## DISCUSSION AND DECISION

■ Perkins is appealing after the denial of his motion to correct error and the grant of Brown's motion to amend the pleadings to conform to the evidence. A trial court's rulings on a motion to correct error and on a motion to amend the pleadings are reviewed for an abuse of discretion. *Knowledge A–Z, Inc. v. Sentry Ins.,* 891 N.E.2d 581, 584 (Ind.Ct.App.2008) (motion to correct error), *trans. denied; Countrymark Coop., Inc. v. Hammes,* 892 N.E.2d 683, 692 (Ind.Ct.App.2008) (motion to amend pleadings to conform to evidence), *trans. denied.* An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court and the inferences that may be drawn therefrom. *Knowledge A–Z, Inc.,* 891 N.E.2d at 584.

■ Perkins filed his motion to correct error after the trial court's judgment against him at the conclusion of a bench trial. Here, the trial court entered a general judgment without findings of fact and conclusions thereon. "A general judgment will be affirmed upon any legal theory consistent with the evidence, and the court of review neither reweighs the evidence nor rejudges the credibility of the witnesses." *Jones v. Jones,* 641 N.E.2d 98, 101 (Ind.Ct.App.1994). We will reverse the judgment only if it is clearly erroneous. *Borders v. Noel,* 800 N.E.2d 586, 591 (Ind.Ct.App.2003). We presume that the trial court correctly followed the law. *Jones,* 641 N.E.2d at 101. This presumption is one of the strongest presumptions applicable to our consideration of a case on appeal. *Id.*

■ Perkins argues that no evidence supported imposing personal liability against him. He specifically claims that no evidence was presented that supported a veil-piercing analysis or would have shown that he authorized unlawful distributions resulting in Kessler's insolvency and allowing personal liability under the Indiana Business Flexibility Act.[4] Perkins also contends that the trial court abused its discretion when it allowed Brown to amend his complaint to seek personal liability against Perkins. Perkins contends that Brown's original complaint failed to request that the trial court disregard the form of the LLC and hold Perkins personally liable; it only requested a declaration of ownership percentages, an accounting of Kessler's finances, and that Kessler be dissolved.

The Indiana Business Flexibility Act provides that a member of an LLC may be held personally liable to the LLC if the member "votes for or assents to a distribution in violation of the operating agreement or section 6 of this chapter." Ind. Code § 23–18–5–7(a). Here, there was no evidence presented that an operating agreement governed Kessler. Therefore, Perkins could only be found personally liable to Kessler if he authorized distributions in violation of Indiana Code section 23–18–5–6. This section provides that:

(a) A distribution may not be made if after giving effect to the distribution:
(1) the limited liability company would not be able to pay its debts as the debts become due in the usual course of business; or
(2) the limited liability company's total assets would be less than the sum of its total liabilities plus, unless the operating agreement permits otherwise, the amount that would be needed if the affairs of the limited liability company were to be wound up at the time of the distribution to satisfy any preferential rights that are superior to the rights of members receiving the distribution.

Ind.Code § 23–18–5–6(a). In other words, a member may authorize a distribution under this section as long as the distribution does not result in the LLC becoming insolvent. *See Jackson v. Farmers State Bank,* 481 N.E.2d 395, 403 n. 7 (Ind.Ct. App.1985), *trans. denied.*

Here, Brown filed a complaint against Perkins and Kessler requesting declaratory judgment as to the ownership percentages of both Brown and Perkins, an equitable accounting of Kessler, and that Kessler be dissolved with the net remaining assets to be distributed according to the court-determined ownership percentages. Prior to the start of trial, Perkins's counsel stipulated that Brown was a fifty-percent owner of Kessler and that the company should be dissolved. At trial, Brown presented evidence of what he believed to be an estimate of Kessler's income as of the time that he was still an active member of Kessler. He estimated that the total income Kessler should have received was $387,939.61 and then assumed, based on the historical practice of the business, that twenty percent of that amount would have been used to cover Kessler's operating expenses. No evidence was presented regarding what the actual finances of Kessler were prior to the dissolution, including what income was actually received and what the actual expenses of the LLC were during this period of time. The trial court did not order an outside accounting of Kessler's finances to determine these actual amounts.

---

4. The article of the Indiana Code dealing with limited liability companies may be cited as the Indiana Business Flexibility Act. Ind.Code § 23–18–1–1.

We believe that it was error for the trial court to determine the amount of damages that Brown was due in the dissolution of Kessler without ordering an outside accounting of the LLC's finances. Without any direct evidence regarding Kessler's finances or whether Perkins authorized any unlawful distributions after June 2006, the trial court was unable to accurately determine if Kessler received all of the money that it was owed under its outstanding invoices, who the creditors of the LLC were, what Kessler's actual expenses were, and if twenty percent of the accounts receivables would have covered the expenses. Additionally, the trial court was unable to accurately determine whether Perkins made any distributions during this period of time that would have created personal liability. These procedural steps were necessary to obtain an accurate, equitable accounting of Kessler's finances at the time of dissolution and to guarantee that each party is awarded its proper share of the assets.

When winding up an LLC, the assets must be distributed as follows:

(1) To creditors, including member and managers who are creditors to the extent permitted by law, to satisfy the liabilities of the limited liability company whether by payment or by the establishment of adequate reserves....

(2) Unless otherwise provided in a written operating agreement, to members and former members to satisfy the liabilities for distributions under IC 23–18–5–4 and IC 23–18–5–5.

(3) Unless otherwise provided in a written operating agreement, to members in proportion to the returned contribution.

Ind.Code § 23–18–9–6. Without completing the proper procedural steps of conducting an accounting and receiving all of Kessler's pertinent financial information at the time of dissolution, we cannot be certain that the assets were distributed according to the above statute.

Because we conclude that the trial court erred when it failed to order a thorough outside accounting of Kessler's finances, it abused its discretion when it denied Perkins's motion to correct error. We reverse and remand with instructions for the trial court to order and oversee an outside accounting of Kessler's finances in order to determine proper distribution to the LLC's creditors as well as to Perkins and Brown. After an accounting is completed, the trial court shall make an appropriate entry of damages due to each party, including any determination of personal liability of Perkins under the Indiana Business Flexibility Act.

Reversed and remanded.

ROBB, J., and BRADFORD, J., concur.