**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 30 2014, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**BRIAN R. GATES**
**J. THOMAS VETNE**
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. PALMER**
May, Oberfell, Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY S. ENDERS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  71A04-1407-PL-332 |
| | ) | |
| ESTATE OF RANDALL ENDERS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
The Honorable Larry L. Ambler, Magistrate Judge
Cause No. 71C01-1208-PL-188

**December 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Timothy Enders appeals from the trial court's order providing that Timothy and the estate of his deceased brother, Randall Enders, are each entitled to 50% of the net proceeds of the liquidation of their family business. Timothy argues that he and Randall owned all corporate shares as joint tenants and that, consequently, he is entitled to all proceeds of the liquidation. Finding that a 1991 attempted transfer of shares owned as individuals to shares owned as joint tenants was invalid, and that the brothers each owned 50% of the corporate shares, we affirm.

## FACTS

The relevant underlying facts in this case were described by this Court in the first appeal stemming from the dissolution of Enders & Longway Builders, Inc. (the Company):

> The Company is a general contracting firm that Timothy and Randall's father started in 1981. Their father was the supervisor and worked with Timothy, who was a bricklayer and a carpenter, and Randall, who was a carpenter. After their father died in 1987, Randall and Timothy inherited the Company with each owning 500 shares of stock or fifty percent of the Company.
>
> On June 24, 1988, Randall and Timothy entered into a Buy–Sell Agreement. On March 13, 1991, Randall and Timothy executed a First Amendment to the Buy–Sell Agreement (the "Agreement"). The Agreement provided that "no Stockholder shall . . . in any manner encumber or otherwise dispose of the whole or any part of any interest of any kind in the whole or any part of the shares . . . or the certificates." Additionally, the Agreement stated that all stocks in the Company "will be jointly held" and that upon the death of a stockholder, any shares of stock not jointly held "shall be sold and purchased by the remaining Stockholder for ONE AND NO/100 ($1.00) DOLLAR per share." The Agreement also provided that before a stockholder could transfer any shares during his lifetime, he had to first offer them to the Company or the other stockholder "at a price of ONE AND NO/100 ($1.00) DOLLAR per share."

***

In 2004, Timothy became disabled, and the business began to wind down as Timothy ended his active participation in the Company. . . .

Despite Timothy's decision to not be involved, he was critical of the way in which his brother ran the Company. More particularly, Timothy commented that the business would be more successful if Randall would "get out of the bed and go to work." Randall was in bed because he had been diagnosed with terminal cancer in 2012. . . .

Because of Randall's deteriorating health, the business had been winding down, and Randall had incurred significant medical bills; he tried to speak to Timothy about dissolving the Company's corporate structure. The brothers, however, disagreed over the distribution of assets, including the certificates of deposit owed by the corporation, but over which Timothy had exclusive control.

On August 21, 2012, Randall filed a petition for judicial dissolution of the corporation. The petition alleged that Timothy had not been involved with the management of the Company in over a year and that Randall wanted to wrap up the affairs of the Company and dissolve it but Timothy would not agree. The petition also alleged that the shareholders were deadlocked in the management of the corporate affairs. The petition requested that the trial court enter an order dissolving the corporation and directing the shareholders to wind up and liquidate its business and affairs or to appoint a receiver to windup and liquidate the business and affairs.

***

At the October 11 hearing, Mark McNamee, a CPA who had acted as the brothers' individual accountant and the Company's accountant for the past ten to fifteen years testified. . . .

***

McNamee had been advising Randall and Timothy to dissolve the corporation for several years because the corporation was a "one-man show," and there was no legitimate reason to keep the complexity of the corporation, together with the related expenses, open. Randall could have just as easily been a sole proprietor. Timothy disagreed with the recommendation because of the tax consequences of dissolution.

Randall and Timothy disputed over whether the corporation should be dissolved. That disagreement created a deadlock in the corporate management. From McNamee's experience as an accountant and from an accountant's perspective, the business affairs of the corporation could not

3

be conducted to the advantage of the shareholders and directors with the deadlock that existed. . . . Put another way, the Company was not sustaining itself with its operations, but rather with its existing assets such as certificates of deposit totaling $330,000 and forty acres of land in Niles with access to the St. Joe River.

Enders v. Enders, 991 N.E.2d 154, 155-58 (Ind. Ct. App. 2013) (internal citations and footnote omitted), trans. denied. Randall passed away the day after the hearing was held, but the trial court later granted his petition to dissolve the Company retroactively to the date of the hearing. Timothy appealed, and this Court affirmed the dissolution. On rehearing, this Court explicitly noted that its opinion had—intentionally—not addressed whether the corporation's shares were jointly owned with rights of survivorship. Instead, "the issue regarding the effect of the shares certificates should be resolved by the trial court during the winding up of the corporate affairs and distribution of the corporate assets." Enders v. Enders, 4 N.E.3d 667, 667 (Ind. Ct. App. 2013).

On May 15, 2014, the trial court held a bench trial on the issues of corporate ownership and asset distribution following the Company's liquidation. On June 20, 2014, the trial court issued an order providing, in salient part, as follows:

2.  Petitioner and Respondent each own fifty percent (50%) of the outstanding corperate [sic] shares of the Corporation.

3.  Therefore Petitioner and Respondent are each entitled to a 50/50 split of the net proceeds of liquidation after the corporate affairs are wound up.

Appellant's App. p. 8-9. Timothy now appeals.

4

DISCUSSION AND DECISION

The trial court's order is a general judgment, which we will affirm upon any legal theory consistent with the evidence. Perkins v. Brown, 901 N.E.2d 63, 65 (Ind. Ct. App. 2009). In conducting our review, we will neither reweigh the evidence nor assess witness credibility. Id. We will reverse only if the judgment is clearly erroneous. Id.

In 1987, the Company issued identical Shares Certificates to Timothy and Randall, providing them each with 500 shares of stock. Appellant's App. p. 90, 93. The 1987 Certificates are signed by the Secretary of the Company and by Randall, as President of the Company. Id.

In 1991, an attempt was made to transfer the 1987 Certificates to the Company in exchange for a new certificate. An assignment provision was placed on the back of the 1987 Certificates. That provision is signed by Timothy and Randall, respectively, but the line for a witness's signature is left blank on both documents. Id. at 91, 94.

The 1991 Certificate, which provided that Timothy and Randall owned 1,000 shares as joint tenants with right of survivorship, was signed by Randall but not by the Secretary. Id. at 96. Additionally, the 1991 Certificate does not contain the required restrictive language that is present on the 1987 Certificates: "The transfer of the shares of stock represented by the within certificate is restricted under the terms of a Buy and Sell Agreement dated June 24, 1988, a copy of which is on file at the office of the Corporation." Id. at 91, 94, 97.

5

Indiana Code section 23-1-26-6(d)(1) requires that all corporate shares certificates must be signed by at least two officers[1] designated by the bylaws or the board of directors. The Company's By-Laws require that all shares certificates must be signed by (1) the Chairman of the Board, the Vice Chairman of the Board, the President, or the Vice President, and (2) the Treasurer, Assistant Treasurer, Secretary, or Assistant Secretary. Appellee's App. p. 1. Finally, the Buy and Sell Agreement requires that shares certificates include a paragraph containing the restrictive language set forth above. Appellant's App. p. 27.

The 1991 attempted transfer of shares from 50/50 ownership to ownership as joint tenants with right of survivorship fails to comply with the Indiana Code, the By-Laws, or the Buy-Sell Agreement. Inherent to the trial court's order is an implicit conclusion that this transfer was invalid.[2] Given our standard of review, we will defer to that conclusion. Because the transfer was invalid, what remains is the share distribution as it originally occurred in 1987, with each brother owning 500 shares individually. Consequently, we find that the trial court did not err by holding that Timothy and Randall each own 50% of the corporate shares and are each entitled to a 50/50 split of the liquidation proceeds.

The judgment of the trial court is affirmed.

VAIDIK, C.J., and RILEY, J., concur.

---

[1] Corporations that have only one officer need only have one signature. I.C. § 23-1-26-6(d)(1).

[2] Timothy argues that even if the 1991 Certificate was invalid, the transfer to the Company of the 1987 Certificates was valid, with the result that all shares reverted to the Company itself. We cannot agree, as the conveyance of the 1987 Certificates to the Company was part and parcel of the transfer transaction. We find that the entire transaction was invalid.